UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>    vs.<br><br>MARCUS ENRIQUE ESPINOSA,<br>SAMMY CISNEROS and<br>BRENDA LEE OTWELL,<br><br>             Defendants. | CR. 15-50016-JLV<br><br><br><br>ORDER |

Defendants Sammy Cisneros and Marcus Enrique Espinosa filed motions to dismiss the indictment. (Dockets 127 & 147). Both Cisneros and Espinosa claim violations of their statutory and constitutional speedy trial rights. (Dockets 128 & 148). Cisneros filed a motion to suppress evidence. (Docket 85). Espinosa filed a motion to join Cisneros' suppression motion, which the court granted. (Docket 98). The court resolves each motion in turn.

**ANALYSIS**

**I. Motions to dismiss the indictment**

   **a. Speedy Trial Act**

The Speedy Trial Act ("the Act"), 18 U.S.C. §§ 3161-74, "requires that trial begin within 70 days after a defendant is charged or makes an initial appearance unless the running of the time is stopped for reasons set out in the statute." United States v. Lucas, 499 F.3d 769, 782 (8th Cir. 2007) (en banc). The Act lists the periods of time excludable from the 70 days. 18 U.S.C.

§ 3161(h). One is the "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion[.]" 18 U.S.C. § 3161(h)(1)(D). "The [e]xclusion of pre trial motion delay is automatic, and the time during which a motion is pending is excludable even if the pendency of the motion is not the cause of the delay." United States v. Williams, 557 F.3d 943, 952 (8th Cir. 2009) (internal quotation marks and citation omitted).

Another "statutorily approved reason[ ] for days to be excluded from the speedy-trial calculation is an 'ends-of-justice' continuance: A trial may be delayed if a district court finds the ends of justice so require and 'sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.' " United States v. Adejumo, 772 F.3d 513, 521 (8th Cir. 2014) (quoting 18 U.S.C. § 3161(h)(7)(A)). This category of excludable time can result from "a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government[.]" 18 U.S.C. § 3161(h)(7)(A). "Once those days are excluded, however, 'if the total number of non-excludable days exceeds seventy, then the district court must dismiss the indictment upon the defendant's motion.' " Adejumo, 772 F.3d at 521 (quoting United States v. Villarreal, 707 F.3d 942, 953 (8th Cir. 2013)). "It is the defendant's burden to show the motion should be granted." Id.

Cisneros and Espinosa argue the Act's 70-day requirement has been violated and move to dismiss the indictment on that ground. (Dockets 128 & 148). Based on their calculations of the excluded time under the Act, the 70-day period has been exceeded by several hundred days. (Dockets 128 & 148). The government agrees that the Act has been violated. (Dockets 139 & 150).

**(1)  Exclusions based on defendants**

A grand jury indicted Sammy Cisneros, Marcus Enrique Espinosa and Brenda Lee Otwell on January 21, 2015. (Docket 1). The indictment alleged all defendants violated federal law by conspiring to distribute methamphetamine. Id. The indictment charged Espinosa with possession of a firearm by a prohibited person and Cisneros with possession of an unregistered firearm. Id. Espinosa appeared before Magistrate Judge Veronica Duffy on February 17, 2015. (Docket 16). Cisneros appeared before Magistrate Judge John Simko on February 26, 2015. (Docket 29). On March 4, 2015, 15 days after Espinosa's appearance and six days after Cisneros' appearance, Espinosa filed a motion for a continuance. (Docket 40). As the court describes below, that excludable period of time—based purely on defendants' motions—lasted from March 4, 2015, until August 13, 2016.

The court granted Espinosa's motion for a continuance and found "the ends of justice served by continuing [the] trial outweigh the best interests of the public and the defendants in a speedy trial insofar as counsel for Mr. Espinosa has made known to the court that additional time is needed to review discovery." (Docket 42 at p. 1). The court noted "[n]o objection was filed by the

government or co-defendants." Id.  This is an "ends of justice" continuance

excluded from the Act's 70-day period.  See 18 U.S.C. § 3161(h)(7)(A); Adejumo,

772 F.3d at 521.  Cisneros need not file a motion for a continuance or formally

join Espinosa's motion, because "[e]xclusions of time attributable to one

defendant apply to all codefendants."  United States v. Mallett, 751 F.3d 907,

911 (8th Cir. 2014) (internal quotation marks omitted).  The order granting the

continuance set July 21, 2015, as the tentative trial date, meaning if no more

continuances were granted and trial did not occur on that date, the speedy trial

clock would begin running and adding to the non-excluded days.  (Docket 42 at

p. 2).

On May 29, 2015, Espinosa filed a continuance motion.  (Docket 44).

Cisneros and Otwell objected.  (Dockets 45 & 46).  Cisneros' objection stated he

did not agree to the continuance but planned on filing a suppression motion,

"which will likely toll the speedy trial clock[.]" (Docket 46 at p. 1).  On June 8,

2015, Cisneros filed a motion for discovery.  (Docket 47).  The court granted

Espinosa's motion for a continuance on Jun 16, 2015, highlighting Cisneros'

intention to file a suppression motion and his pending discovery motion.[1]

(Docket 49 at p. 1).  The court determined "the ends of justice served by

continuing this trial outweigh the best interests of the public and the

defendants in a speedy trial insofar as counsel for Mr. Espinosa has made

known to the court that additional time is needed to review discovery."  Id.; see

---

[1]The court referred the motion to the magistrate judge.  (Docket 50).
Defendant eventually moved to withdraw the motion.  (Docket 79).  The
magistrate judge granted the motion to withdraw and denied the discovery
motion as moot.  (Dockets 80 & 81).

4

18 U.S.C. § 3161(h)(7)(A). The jury trial date was tentatively set for October 13, 2015. (Docket 49 at p. 2).

Cisneros filed a motion for a continuance on September 1, 2015. (Docket 56). The court granted Cisneros' continuance motion on September 9, 2015. (Docket 60). In the order, the court provided an ends of justice basis for moving the trial date: "the ends of justice served by continuing this trial outweigh the best interests of the public and the defendants in a speedy trial insofar as counsel for Mr. Cisneros has made known to the court that additional time is needed to complete the investigation and to prepare for trial." Id. at p. 1; see 18 U.S.C. § 3161(h)(7)(A). The court tentatively set the jury trial for November 10, 2015. (Docket 60 at p. 2).

Espinosa filed a continuance motion on October 23, 2015. (Docket 66). Neither of the other defendants objected and the court granted the motion based on an "ends of justice" finding. (Docket 67); see 18 U.S.C. § 3161(h)(7)(A). January 12, 2016, was set as the tentative jury trial date. (Docket 67 at p. 2).

On December 21, 2015, Espinosa filed a motion requesting the court extend the deadline for filing a suppression motion until January 15, 2016. (Dockets 71 & 72). Because the new deadline Espinosa requested went beyond the jury trial date, the court construed the filing as a continuance motion and granted it based on the "ends of justice." (Docket 74); see 18 U.S.C. § 3161(h)(7)(A). The court extended the motion deadline to January 26, 2016,

and the jury trial date to March 8, 2016.  (Docket 74 at pp. 1-2).  Neither Otwell nor Cisneros objected to Espinosa's motion.

On January 26, 2016, Cisneros filed a motion requesting until February 10, 2016, to submit his suppression motion and a general extension on the case's other dates.  (Docket 76).  Neither Espinosa nor Otwell objected and the court based its order granting the motion on the "ends of justice."  (Docket 83); see 18 U.S.C. § 3161(h)(7)(A).  The court set the new suppression motion deadline for February 9, 2016, and the tentative trial date as March 2, 2016. (Docket 83 at pp. 1-2).

Cisneros filed his pending suppression motion on February 9, 2016. (Docket 85).  The court granted Espinosa's motion for joinder on Cisneros' suppression motion.  (Docket 98).  The suppression motion was referred to the magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order dated March 9, 2015.  On May 16, 2016, the magistrate judge conducted a hearing on the suppression motion.  (Docket 100).  The final supplemental brief following the hearing was filed by Espinosa on July 14, 2016.  (Docket 113).

As previously noted, a "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excluded under the Act.  18 U.S.C. § 3161(h)(1)(D).  "If a district court holds a hearing on a motion . . . the 'hearing' clause controls and the time between the filing and the hearing is thus excludable."  Williams, 557 F.3d at 951.  "[I]f the court requires time to

consider the motion after all information is available, this time is limited [for purposes of exclusion of time] to 30 days under 18 U.S.C. § 3161(h)(1)(H)." United States v. Herbst, 666 F.3d 504, 510 n.3 (8th Cir. 2012) (internal quotation marks omitted). Because the magistrate judge held a hearing on the suppression motion, the time between the filing and the hearing is excluded. See Williams, 557 F.3d at 951. "The time during which the district court is awaiting [post-hearing] filings is excluded." Id. at 952 (internal citation omitted). The Act then excludes 30 days following the last supplemental brief. See Herbst, 666 F.3d at 510. Consequently, the excludable period—based on defendants' continuance motions and the suppression motion pursued by Cisneros and Espinosa—starting on March 4, 2015, ended on August 13, 2016, 30 days after the submission of the final supplemental brief following the suppression motion hearing. This amounts to the exclusion of 528 days.

Before Cisneros filed his motion to dismiss the indictment, three other motions caused the exclusion of time under the Act. On August 31, 2016, Cisneros filed a furlough motion, which the court denied the next day. (Dockets 115 & 116). That motion excludes one day. On December 29, 2016, Otwell filed a motion for reconsideration of pre-trial release, and the court denied the motion eight days later, so those days are excluded. (Dockets 117 & 121). Otwell filed an *ex parte* motion on February 1, 2017, and the motion was denied after pending for two excludable days. (Dockets 123 & 126). These motions combine for 11 excludable days.

On May 12, 2017, Cisneros filed his motion to dismiss the indictment based on violations of his statutory and constitutional speedy trial rights. (Docket 127). The government responded to Cisneros' motion to dismiss on June 12, 2017. (Docket 139). Cisneros' did not file a reply, but it was due on June 16, 2017. The period between the filing of Cisneros' motion to dismiss, May 12, 2017, and 30 days after his reply brief was due, July 16, 2017, is excluded under the Act. Consequently, 65 days are excluded.

Espinosa filed an *ex parte* motion for a new attorney on September 8, 2017. (Docket 141). The court granted his motion on September 18, 2017, so those 10 days are excluded.

On October 16, 2017, Espinosa filed his motion to dismiss the indictment alleging his statutory and constitutional speedy trial rights were violated. (Docket 147). The excludable period of time starting when Espinosa filed his motion to dismiss ends on the date of this order because it resolves the motion. This order is entered on October 31, 2017, so the 15 days between October 16, 2017, and today are excluded.

Based on the calculation of exclusions caused by defendants, 629 days are excludable under the Act: 528 days from the first continuance motion through the final brief on the suppression motion; 11 days from various motions after suppression motion briefing; 65 days from Cisneros' motion to dismiss; 10 days from Espinosa's recent motion for a new attorney; and 15 days from Espinosa's motion to dismiss.

**(2) Exclusions based on the court**

After finding 629 days excludable based on the defendants' filings, the court must now determine what number of the remaining days are excluded under the Act.

As explained above, a "statutorily approved reason[ ] for days to be excluded from the speedy-trial calculation is an 'ends-of-justice' continuance: A trial may be delayed if a district court finds the ends of justice so require and 'sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.' " Adejumo, 772 F.3d at 521 (quoting 18 U.S.C. § 3161(h)(7)(A)). An exclusion based on the "ends of justice" can be done by the court *sua sponte*. United States v. Shellef, 756 F. Supp. 2d 280, 288-89 (E.D.N.Y. 2011), aff'd, 718 F.3d 94 (2d Cir. 2013) ("[T]he time under the Act can [be] excluded by the Court *sua sponte* or at the request of a party if a continuance serves the 'ends of justice.' "); see United States v. Engstrom, 7 F.3d 1423, 1426 (9th Cir. 1993), as amended (Nov. 23, 1993) ("The district court may exclude from the 70-day calculation delay caused by a continuance ordered by the judge sua sponte or upon motion of either party" based on the ends of justice subsection of the Act).

An "ends of justice" continuance can also be open-ended. United States v. Wilson, 216 F. Supp. 3d 566, 580 (E.D. Pa. 2016) ("The ['ends of justice'] continuance can be open-ended, rather than for a specific period of time, but it

must be [ ] granted prior to the days being excluded."); see United States v. Twitty, 107 F.3d 1482, 1489 (11th Cir. 1997) ("An open-ended continuance may be granted to serve the ends of justice."); see also United States v. Santiago-Becerril, 130 F.3d 11, 17-18 (1st Cir. 1997) ("Open-ended continuances are not prohibited *per se*.").

The court has not found a case where the United States Court of Appeals for the Eighth Circuit squarely ruled on open-ended continuances. The closest case is United States v. Hessman, 493 F.3d 977, 981 (8th Cir. 2007), where the Eighth Circuit approved of an open-ended continuance, cited the Speedy Trial Act reasoning the Eleventh Circuit set forth in Twitty, 107 F.3d at 1489, and noted the importance of a defendant not objecting to the open-ended aspect of the continuance. The First, Third, Fifth, Tenth and Eleventh Circuits held open-ended continuances are consistent with the Act. See United States v. Spring, 80 F.3d 1450, 1457-58 (10th Cir. 1996) (collecting cases); Twitty, 107 F.3d at 1489; but see United States v. Jordan, 915 F.2d 563, 565 (9th Cir. 1990) (stating the requirement in the Ninth Circuit that "an 'ends of justice' continuance be specifically limited in time.' "). The court finds the reasoning of the First, Third, Fifth, Tenth and Eleventh Circuits persuasive and concludes open-ended continuances are permitted under the Act.

Some courts permitting open-ended continuances require the durations to be "reasonable." See, e.g., United States v. Clark, 717 F.3d 790, 823 (10th Cir. 2013). In the Eleventh Circuit, however, "[i]f the trial court determines that the 'ends of justice' require the grant of a continuance, and makes the

required findings, *any* period of delay is excludable under [the Act.]" <u>Twitty</u>,

107 F.3d at 1489 (emphasis in original); <u>United States v. Hill</u>, 487 Fed. Appx.

560, 562 (11th Cir. 2012) (citing this holding from <u>Twitty</u>).  The text of the

statute mirrors the Eleventh Circuit's reasoning, providing for the exclusion of

"*Any* period of delay resulting from a continuance granted by any judge on his

own motion . . . if the judge granted such continuance on the basis of his

findings that the ends of justice service" are served.  18 U.S.C. § 3161(h)(7)(A)

(emphasis added).

The Act requires a court to accompany an "ends of justice" continuance

with specific findings.  <u>See</u> <u>id.</u>  "No such period of delay resulting from a

continuance granted by the court in accordance with this paragraph shall be

excludable under this subsection unless the court sets forth, in the record of

the case, either orally or in writing, its reasons for finding that the ends of

justice served by the granting of such continuance outweigh the best interests

of the public and the defendant in a speedy trial."  <u>Id.</u>  "Although the Act is

clear that the findings must be made, if only in the judge's mind, before

granting the continuance . . . the Act is ambiguous on precisely when those

findings must be set forth in the record of the case."  <u>Zedner v. United States</u>,

547 U.S. 489, 506-07 (2006) (internal quotation marks and alteration omitted);

<u>Adejumo</u>, 772 F.3d at 522.  "At the very least the Act implies that those

findings must be put on the record by the time a district court rules on a

defendant's motion to dismiss . . . ."  <u>Zedner</u>, 547 U.S. at 507.  Courts are "not

required to make a contemporaneous record of [their] ends-of-justice findings."
Adejumo, 772 F.3d at 522 (noting that "a subsequent articulation suffices[ ]").

After Cisneros filed his suppression motion, Espinosa filed a motion for a
continuance. (Docket 90). The court denied the continuance motion as moot
and stated the case's deadlines and trial date were canceled for all defendants
pending resolution of Cisneros' motion to suppress. (Docket 91). The court's
order denying the continuance motion as moot constitutes an open-ended and
*sua sponte* continuance, which starts a period of excludable time under the
Act. See Twitty, 107 F.3d at 1489.[2] The order is an "ends of justice"
continuance because it states the case must be delayed until a later time in
light of Cisneros' complex suppression motion. See 18 U.S.C. § 3161(h)(7)(B)
(stating case complexity and number of defendants can justify an "ends of
justice" continuance); see also United States v. Breen, 243 F.3d 591, 597 (2d
Cir. 2001) ("[F]ailure to utter the magic words 'ends-of-justice' at the time of
ordering the continuance is not necessarily fatal."). The court finds this "ends
of justice" continuance was justified for several reasons: Cisneros' motion to
suppress raised complicated factual and legal issues; the case involves complex
firearm and drug conspiracy allegations connecting multiple defendants with
significant quantities of methamphetamine; and it would have been a
miscarriage of justice for the court not to extend the case based on the
suppression motion. See 18 U.S.C. § 3161(h)(7)(B) (providing the factors on
which to base an "ends of justice" continuance). For those reasons, the ends of

---

[2]This is the second of the two *sua sponte* continuances in this case. The
next paragraph describes the first continuance.

justice served by granting an open-ended, *sua sponte* continuance outweigh the best interest of the public and the defendants in a speedy trial.  18 U.S.C. § 3161(h)(7)(A).

The court entered its first *sua sponte* continuance on February 24, 2015. (Docket 22).  This was seven days after Espinosa's initial appearance.  (Docket 16).  In the order, the court cited 18 U.S.C. § 3161 et seq. and stated its intention was "to set forth orderly progression dates[.]"  (Docket 22 at p. 1). The court finds this was an "ends of justice" continuance justified for several reasons: the need to give defense counsel time to review the case file and receive discovery; it would have been a miscarriage of justice not to provide defense counsel and government counsel time to work through the case; and the case presented complex firearm and drug conspiracy allegations with multiple defendants.  See 18 U.S.C. § 3161(h)(7)(B).  The court set April 28, 2015, as the jury trial date.  (Docket 22).  The order applied to Otwell and Espinosa because Cisneros had his initial appearance two days after the court's order.  (Dockets 22 & 29).  Esinosa's first continuance motion was filed on March 4, 2015, before the trial date, and started the excluded time period based on defendants' motions.  See supra Section I.a.(1).  The seven days between Espinosa's initial appearance and the first *sua sponte* continuance is not excluded.  Because the *sua sponte* continuance did not apply to Cisneros, the six days between his initial appearance and Esponsa's motion for a continuance are not excluded.

Because the order canceling the trial date pending resolution of the suppression motion is consistent with the Act, the issue becomes what amount of time following the order is excludable.  As stated above, 629 days of this case's lifespan are excluded based on defendants' motions.  Not factoring in the seven days between Espinosa's initial appearance and the court's first *sua sponte* continuance, the remaining number of not-yet-excluded days since Espinosa's initial appearance is 351.  Without factoring in the six days between Cisneros' initial appearance and Espinosa's first continuance motion, the remaining number of not-yet-excluded days since Cisneros' initial appearance is 343.  Because the suppression motion is still pending, the court's *sua sponte* continuance in light of the motion can apply to these remaining days.  The court finds the remaining days since defendants' initial appearances are excludable under the act based on the court's *sua sponte* continuance.  See Twitty, 107 F.3d at 1489 ("If the trial court determines that the 'ends of justice' require the grant of a continuance, and makes the required findings, *any* period of delay is excludable under [the Act.]").  Even if the Act required the open-ended continuance to be reasonable in duration, the court concludes the resulting exclusion of days is reasonable based on the findings above.  See United States v. Green, 516 Fed. Appx. 113, 122-23 (3d Cir. 2013) (permitting a 16-month open-ended continuance).  None of the defendants objected to the court's open-ended, *sua sponte* continuance until Cisneros' motion to dismiss

did so indirectly approximately 15 months later. The remaining 351 days for Espinosa and 343 days for Cisneros are excludable under the Act.[3]

Neither the 629 days excluded by defendants' motions nor the remaining days excluded by the court's *sua sponte* "ends of justice" continuances count toward the Act's 70-day requirement. Consequently, the only days not excluded are (a) the seven days passing between Espinosa's initial appearance and the court's first *sua sponte* continuance, and (b) the six days between Cisneros' initial appearance and the first continuance motion. Under the Act's 70-day requirement, there are 64 days remaining for Cisneros and 63 for Espinosa. The Speedy Trial Act has not been violated. Both motions to dismiss based on violations of the Act are denied.

### b. Sixth Amendment

"Sixth Amendment and Speedy Trial Act challenges for delay are reviewed independently of one another." Williams, 557 F.3d at 948 (citation and internal quotation marks omitted). "As to the separate Sixth Amendment speedy trial claim, [the United States Court of Appeals for the Eighth Circuit] stated that '[i]t would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not.'" United States v. Shepard, 462 F.3d 847, 864 (8th Cir. 2006) (quoting United States v. Titlbach, 339 F.3d 692, 699 (8th Cir. 2003)). A defendant's Sixth Amendment right to a speedy trial " 'attaches at

---

[3]Under the Eleventh Circuit approach, the 613 days between the court's *sua sponte* continuance and this order resolving the suppression motion are excludable. See Twitty, 107 F.3d at 1489 ("If the trial court determines that the 'ends of justice' require the grant of a continuance, and makes the required findings, *any* period of delay is excludable under [the Act.]"). This provides an additional basis for finding no violation of the Act. See id.

the time of arrest or indictment, whichever comes first, and continues until the trial commences.'" United States v. Erenas-Luna, 560 F.3d 772, 776 (8th Cir. 2009) (quoting United States v. McGhee, 532 F.3d 733, 739 (8th Cir. 2008)). The Sixth Amendment does not specify a time limit in which an accused must be brought to trial. See U.S. Const. amend. VI.

Because of the "vague" nature of the Sixth Amendment right, "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." Barker v. Wingo, 407 U.S. 514, 522 (1972). To assist courts in evaluating speedy trial claims, the Barker Court established a four-factor balancing test "in which the conduct of both the prosecution and the defendant are weighed." Id. at 530. These factors are the (1) length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) the prejudice to the defendant. Id.

### (1) Length of delay

Because the "length of the delay is to some extent a triggering mechanism," courts need not inquire into the remaining factors "[u]ntil there is some delay which is presumptively prejudicial[.]" Id. "To trigger speedy trial analysis, the defendant must allege the interval between accusation and trial has crossed a line dividing ordinary from presumptively prejudicial delay." Mallett, 751 F.3d at 913 (internal quotation marks omitted).

Cisneros and Espinosa were indicted on January 1, 2015. (Docket 1). Espinosa's initial appearance occurred on February 17, 2015, and Cisneros' was on February 26, 2015. (Dockets 16 & 29). Trial has yet to occur, so the

delay has been just short of three years.  That is presumptively prejudicial.

See Mallett, 751 F.3d at 913-14 (finding 17 months presumptively prejudicial); United States v. Aldaco, 477 F.3d 1008, 1019 (8th Cir. 2007) (finding three and one-half years presumptively prejudicial).  Consequently, the court must analyze the remaining Barker factors.

### (2) Reason for delay

The court must "consider the reasons for the delay and evaluate whether the government or the criminal defendant is more to blame." Mallett, 751 F.3d at 914 (internal quotation marks omitted).

The record does not demonstrate government negligence caused the nearly three-year delay in this case.  See United States v. Rodriguez-Valencia, 753 F.3d 801, 806-07 (8th Cir. 2014) (discussing what may constitute government negligence).  Espinosa concedes this point, characterizing the government's failure to bring the case's delay to the court's attention as "lethargy" rather than "a pattern of governmental neglect[.]"  (Docket 148 at p. 16).

Although the court's Speedy Trial Act calculation is an independent analysis, it is helpful here.  Drawing from that calculation, 629 days, or nearly 21 months, of the case's delay are attributable to motions filed by defendants. See supra Section I.a.  This includes continuance motions, a motion to suppress and various other motions.  While a large part of this case's lifespan includes the court's consideration of defendants' suppression motion, defendants shoulder part of the "blame" based on the motions they filed.  See

Mallett, 751 F.3d at 914; cf. McGhee, 532 F.3d at 739 (finding no constitutional violation in a 915-day delay and the defendant mostly responsible for the delay because he "moved for two continuances, a mental competency evaluation, an emergency hearing to withdraw his request for determination of mental competency, and to dismiss the indictment[ ]").

The court finds this factor weighs slightly against the defendants.

### (3) Assertion of speedy trial right

Cisneros first asserted his right to a speedy trial on May 12, 2017. (Docket 127). Espinosa did not formally assert his speedy trial right until October 16, 2017. (Docket 147). The earliest possible assertion of the right from Espinosa came in his September 8, 2017, *ex parte* motion for a new attorney, where he states he asked his prior attorney to file a motion arguing a violation of the Speedy Trial Act. (Docket 141). "Nothing *in the record* indicates [the defendants] acted to protect [their] speedy trial rights earlier [than May 12, 2017, and September 8, 2017]." Mallett, 751 F.3d at 914 (emphasis added). Defendants' "substantial contributions to the pretrial delay belie [their] later attempts to assert [their] speedy trial rights." Id.

### (4) Prejudice

"Finally, the court must consider whether the delay prejudiced [defendant]. In doing so, the court should assess the interests served by the speedy trial right, which are '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' " United States v. Sims, 847 F.3d

18

630, 636 (8th Cir. 2017) (quoting Barker, 407 U.S. at 532). "A showing of actual prejudice is required if the government exercised reasonable diligence in pursuing the defendant." Erenas-Luna, 560 F.3d at 778-79. "Where the government has been negligent, however, prejudice can be presumed if there has been an excessive delay." Id. "Whether or not a showing of prejudice is required in every case, [the Eighth Circuit has] been clear that the degree of prejudice required, if any, depends on the defendant's showing under the preceding Barker factors." Sims, 847 F.3d at 636. The court does not presume this case's delay prejudiced defendant because the record does not establish the government has been negligent. See Erenas-Luna, 560 F.3d at 778-79; supra section I.b.(2). As a result, defendant must show actual prejudice "under the preceding Barker factors." Sims, 847 F.3d at 636.

Cisneros does not sufficiently demonstrate actual prejudice because his motion does not mention the issue. (Dockets 127 & 128). Espinosa addresses the issue and explains the negative impact incarceration has had on him as a person. (Docket 148 at pp. 17-20). He sets forth several troubling experiences during his incarceration. Id. These details are important, but a relevant aspect of the record undermining Espinosa's negative experience in custody is that over half of the case's delay—which extended his custody time—is attributable to motions defendants filed without any party objecting. See supra section I.a. & b.(2).

Of the three interests listed above, "prejudice to the last is the most serious . . . because the inability of a defendant adequately to prepare his case

skews the fairness of the entire system." <u>Erenas-Luna</u>, 560 F.3d at 778 (internal quotation marks omitted). Espinosa and Cisneros fail to present more than "vague claims" about the actual prejudice they suffered, which "are insufficient, without more, to satisfy his burden." <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Young v. United States</u>, 953 F. Supp. 2d 1049, 1064 (D.S.D. 2013) ("The delay did not limit his defense. Young, for example, has not even attempted to identify witnesses helpful to his defense who became unavailable due to the delay."). The court finds neither Espinosa nor Cisneros sufficiently demonstrate actual prejudice.

Although the extensive duration of this case is presumptively prejudicial, most of the <u>Barker</u> factor analysis supports finding no Sixth Amendment violation for defendants. The court denies Cisneros' and Espinosa's motions to dismiss the indictment based on violations of their Sixth Amendment rights to a speedy trial.

## II. Suppression motion

As mentioned above, Cisneros and Espinosa have a pending suppression motion. (Docket 85). Magistrate Judge Daneta Wollmann conducted a hearing on the motion and issued a report and recommendation concluding the motion to suppress should be denied. (Docket 131). Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." <u>Id.</u> The

court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

Cisneros and Espinosa filed objections to the magistrate judge's report and recommendation. (Dockets 133 & 140). Defendants' objections dispute some of the magistrate judge's factual findings. (Dockets 133 at pp. 1-2 & 140 at pp. 1-3). The objections primarily target the magistrate judge's conclusions that law enforcement did not violate defendants' Fourth Amendment rights. (Dockets 133 at pp. 2-6 & 140 at pp. 3-6). As the court establishes the facts, the court will analyze the legal issues. The court specifically addresses defendants' objections where necessary.

**a. First encounter**

Early in the morning on December 12, 2014, Sergeant James Twiss of the Oglala Sioux Tribe Department of Public Safety responded to a motorist assist call for a location near Porcupine, South Dakota. (Docket 131 at p. 2). At 6:46 a.m., Sergeant Twiss arrived at the vehicle that needed assistance. Id. He immediately observed the vehicle was partially parked on the road with its emergency lights on. (Docket 112 at p. 6). Inside the vehicle were a female driver, female passenger, male passenger, an infant and a dog. (Docket 131 at p. 2). The female driver indicated the car was out of gas and asked for assistance. Id. at p. 3. The male passenger elected to join Sergeant Twiss on a ride to the gas station and they left two minutes later at 6:48 a.m. Id.; (Docket 112 at p. 43).

They reached the gas station at 6:56 a.m. (Docket 131 at p. 3). Sergeant Twiss noticed a man with a gas can. Id. The male passenger with Sergeant Twiss stated the man was part of his group in the stranded vehicle and that he and the man would make their way back to the vehicle without the sergeant. Id. Before separating from the male passenger, Sergeant Twiss asked him for identification. Id. The male passenger stated he had no identification, and he said his name was Fabian Espinosa[4] and his date of birth. Id.

The magistrate judge found the above facts involved a consensual encounter consistent with the Fourth amendment. Id. at pp. 6-10. Neither defendants' objections claim the facts above describe a constitutional violation. See Dockets 133 & 140. To the extent defendants do object to the conclusion that no constitutional violation occurred during the situation above, the court rejects the objections because Sergeant Twiss was "engag[ing] in a community-caretaking function with respect to motor vehicles and traffic[.]" United States v. Salgado, 761 F.3d 861, 865 (8th Cir. 2014).

**b. Second encounter**

Sergeant Twiss returned alone to the stranded vehicle at 7:07 a.m. (Dockets 131 at p. 3 & 112 at pp. 44-45). When he arrived the vehicle remained "a road hazard" in his view because it was parked partially on the road. (Docket 112 at p. 10). School buses began traveling at that time, which heightened the problem with the stationary car on the road. Id. Defendants believe Sergeant Twiss' actions following his return to the vehicle constituted

_____

[4]Sergeant Twiss later discovered this man is Marcus Enrique Espinosa, one of the defendants in this case.

Fourth Amendment violations.  (Dockets 133 & 140).  They contend Sergeant Twiss' conduct amounted to a seizure of the vehicle and its occupants without a sufficient basis.  (Dockets 133 & 140).

Sergeant Twiss exited his car and approached the stranded vehicle a second time.  He asked for the license of the driver, whose name was Brenda Otwell,[5] and he interacted with the car's occupants before the two men returned.  (Docket 131 at pp. 4-5).  The women in the car stated Sergeant Twiss drove to the gas station with a man named "Marcus," but they did not know his last name.  Id. at p. 4.  The women confirmed the man already at the gas station with a gas can was a member of their party.  Id.  They knew that man's first name was "Sam" but did not know his last name.  Id.  They indicated they were traveling to Denver.  Id.  Sergeant Twiss brought Otwell's driver's license and the female passenger's identification card with him to his vehicle.  Id.  At 7:13 a.m., he called in a driver's license check on Otwell and dispatch informed him the license was suspended.  (Docket 112 at pp. 16-17, 45).

"A traffic stop constitutes a seizure under the Fourth Amendment." United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2008).  But "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  Whren v. United States, 517 U.S. 806, 810 (1996).  "Any traffic violation, however minor, provides probable cause for a traffic stop."  United States v. $45,000.00 in U.S.

---

[5]She is a codefendant in this case but has no pending motions.

Currency, 749 F.3d 709, 715 (8th Cir. 2014) (internal quotation marks omitted).

Sergeant Twiss testified he returned to the vehicle that originally called for assistance because it presented a road hazard, especially in light of the morning school bus traffic. (Docket 112 at p. 10). Sergeant Twiss' testimony establishes the stranded vehicle on the roadside constituted a traffic violation. Id. "[T]he critical inquiry in a probable-cause determination in the traffic-stop context is what the stopping officer observed *before* [the stop.]" $45,000, 749 F.3d at 715. Defendants argue Sergeant Twiss' conduct following his return to the vehicle was an unconstitutional seizure based on his questions to the car's women and request that they "hold on" while he reviewed their identification. (Dockets 133 & 140). When Sergeant Twiss returned to the vehicle, it was already stationary because it was out of gas, and Sergeant Twiss' observation of a vehicle parked partially on a road provided him with the reasonable belief of a traffic violation. (Docket 112 at p. 10); see $45,000, 749 F.3d at 715. Even if defendants are correct that Sergeant Twiss' subsequent interactions with the women in the car resulted in a seizure, his actions were constitutional because the traffic violation provided probable cause for the stop. See $45,000, 749 F.3d at 715.

The applicable law supports a reasonable belief that a traffic violation occurred. Chapter 15 of the Oglala Sioux Tribe's Law and Order Code ("OST Code") details the Motor Vehicle Code for the Pine Ridge Indian Reservation. The vehicle was stranded just north of Porcupine, South Dakota, on BIA 27,

within the reservation. (Docket 112 at p. 5). Section I Part 6 prohibits reckless driving, which is driving "any vehicle recklessly and in disregard of the rights or safety of others or without due caution and at a speed or in a manner so as to endanger any person or property[.]" OST Code § I, Part 6. Sergeant Twiss' observations of a vehicle ending up without gas parked on part of a road while school buses drive by would justify a reasonable belief that a violation of the OST Code on reckless driving occurred.

During the suppression hearing, Cisneros' counsel asked Sergeant Twiss, "so there was no indication that there was any traffic violation, any accident or anything like that, right?" (Docket 112 at p. 35). He answered, "No, ma'am. I'm sorry. You're correct, ma'am." Id. Whether Sergeant Twiss subjectively believed there was a traffic violation does not affect the constitutional analysis. "If the officer is legally authorized to stop the driver, any additional underlying intent or motivation does not invalidate the stop." United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Wren, 517 U.S. at 813. "[I]t is well-settled that any traffic violation provides a police officer with probable cause to stop a vehicle, even if the officer conducted the valid traffic stop as a pretense for investigating other criminal activity." United States v. Escamilla, 301 F.3d 877, 880 (8th Cir. 2002). It is the traffic violation, not what is going on in the officer's head, that provides probable cause. See United States v. Williams, 431 F.3d 296, 298 (8th Cir. 2005) ("A trooper who sees a traffic violation has probable cause to stop the vehicle and conduct a

reasonable investigation."). "Under this objective test, so long as police have probable cause to believe that a traffic violation has occurred, the stop is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot." United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996). Sergeant Twiss testified his interactions with the car's occupants and Espinosa heightened his suspicions in the moment. (Docket 112 at pp. 49-50).

When Cisernos' attorney cross-examined Sergeant Twiss at the suppression hearing, the questions elicited some answers from Sergeant Twiss indicating he did not have suspicion of a particular crime going on. (Docket 112 at p. 50). At the beginning of this line of questioning, in response to the question "What crime did you think was going on?" Sergeant Twiss answered, "I don't know. That's what I was trying to find out." Id. Although he later says he lacked suspicion of a specific crime, it is clear from his testimony he was suspicious "that greater crimes [were] afoot." Thomas, 93 F.3d at 485. Part of his suspicion came from the travelers' lack of familiarity with each other, which Eighth Circuit law supports. See Salgado, 761 F.3d at 866 (finding "unfamiliarity with fellow travelers reasonably enhanced the trooper's suspicion that the threesome were not on an innocent journey").

Once the traffic violation provided probable cause, Sergeant Twiss "was entitled to conduct an investigation reasonably related in scope to the circumstances that justified the interference in the first place." Bloomfield, 40 F.3d at 915 (internal quotation marks omitted). "At a minimum, a reasonable

investigation can include asking for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose." <u>United States v. Mendoza</u>, 677 F.3d 822, 828 (8th Cir. 2012) (internal quotation marks omitted). Sergeant Twiss obtaining the driver's license and running a license check is "a reasonable investigation[.]" <u>Id.</u> Once dispatch indicated the driver was operating the vehicle on a suspended license, Sergeant Twiss had probable cause to conclude Otwell committed the crime of driving with a suspended license. <u>See</u> OST Code § I, Part 3 (criminalizing the operation of "a vehicle in violation of a lawfully imposed prohibition or restriction").

At 7:13 a.m., Sergeant Twiss called for a K-9 unit to report to his location. (Docket 131 at p. 4). Espinosa and the man from the gas station returned at 7:16 a.m. <u>Id.</u> at p. 5. Before the K-9 unit arrived at approximately 7:33 a.m., Sergeant Twiss asked Espinosa and the other man[6] questions about their identification and travel plans. <u>Id.</u> at pp. 5-6. Defendants argue Sergeant Twiss violated the Fourth Amendment by extending the duration of the traffic stop until a drug dog showed up. (Dockets 133 at pp. 4-5 & 140 at pp. 4-5). Espinosa argues this expansion of the stop violates the United States Supreme Court's recent holding in <u>Rodriguez v. United States</u>, 135 S. Ct. 1609, 1615 (2015). <u>Rodriguez</u> held an officer may not prolong a traffic stop for the purpose of conducting a dog sniff unless there is reasonable suspicion. <u>Id.</u> The magistrate judge determined <u>Rodriguez</u> was inapplicable because the Court

---

[6]During this interaction Sergeant Twiss found out this man is Sammy Cisneros.

decided it after the stop occurred in this case. (Docket 131 at p. 12). Whether or not <u>Rodriguez</u> applies, the court finds the extension of the traffic stop constitutional because Sergeant Twiss had reasonable suspicion at the time he called for the K-9 unit.

"Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at the totality of the circumstances, in light of the officer's experience." <u>United States v. McCarty</u>, 612 F.3d 1020, 1025 (8th Cir. 2010) (internal quotation marks omitted). "To continue to detain a vehicle's occupants after the initial stop is completed, the officer must have been aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." <u>Id.</u> Sergeant Twiss testified he was suspicious of the situation for several reasons. (Docket 112 at p. 49). First, he received conflicting answers about Espinosa's first name. <u>Id.</u> Second, the travelers were unfamiliar with each other because some of them did not know the others' last names. <u>Id.</u>; <u>see</u> <u>Salgado</u>, 761 F.3d at 866 (finding "unfamiliarity with fellow travelers reasonably enhanced the trooper's suspicion that the threesome were not on an innocent journey"). Third, despite lacking familiarity with the other travelers, one person brought an infant for a trip to a different state early in the morning. (Docket 112 at p. 49). Additionally, Sergeant Twiss had probable cause to believe Otwell was committing a crime by driving on a suspended license. <u>Id.</u> at p. 17. These facts provided reasonable suspicion at the time

Sergeant Twiss requested the K-9 unit.[7]  Defendants' objections to the contrary are rejected.

### c.  Car search

The K-9 unit arrived to the scene at approximately 7:33 a.m., conducted a sniff of the vehicle shortly after and detected the presence of drugs inside. (Docket 131 at p. 6).  Law enforcement searched the car, discovering a pistol, shotgun, methamphetamine and paraphernalia.  Id.  They also found methamphetamine in Cisneros' shoe.  Id.

"It is well settled that a warrantless search of an automobile is not unreasonable if law enforcement officers have probable cause to believe that the vehicle contains evidence of criminal activity.  Probable cause exists when the facts available to an officer would warrant a person of reasonable caution to believe that contraband or other evidence of a crime is present."  United States v. Daniel, 809 F.3d 447, 448-49 (8th Cir. 2016) (internal citation omitted).

As the magistrate judge stated, when analyzing law enforcement's reliance on the drug dog's alert, "[t]he appropriate inquiry is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal

---

[7]The magistrate judge analyzed Sergeant Twiss' return to the vehicle differently.  Finding Sergeant Twiss engaged in a consensual encounter under his community-caretaker function, the magistrate judge concluded a seizure occurred when Sergeant Twiss said "hold on."  (Docket 131 at pp. 6-12).  The seizure was constitutional in the magistrate judge's view because reasonable suspicion supported it.  Id.  The court finds this analysis is correct and well-reasoned; defendants' objections to it are rejected and the magistrate judge's finding provides a separate path for determining no constitutional violation occurred.

contraband or evidence of a crime." United States v. Holleman, 743 F.3d 1152, 1157 (8th Cir. 2014) (internal quotation marks omitted). "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." Florida v. Harris, 568 U.S. 237, 246 (2013). The handler of the drug dog testified to the dog's certification and methods. (Docket 131 at p. 16). The dog's alert provided probable cause to search the vehicle, so the search did not violate defendants' constitutional rights.

## ORDER

Based on the above analysis, it is

ORDERED that Cisneros' motion to dismiss the indictment (Docket 127) is denied.

IT IS FURTHER ORDERED that Espinosa's motion to dismiss the indictment (Docket 147) is denied.

IT IS FURTHER ORDERED that Cisneros' objections to the magistrate judge's report and recommendation (Docket 133) are overruled.

IT IS FURTHER ORDERED that Espinosa's objections to the magistrate judge's report and recommendation (Docket 140) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation (Docket 131) is adopted as explained above.

IT IS FURTHER ORDERED that Cisneros and Espinosa's motion to suppress (Docket 85) is denied.

IT IS FURTHER ORDERED that a scheduling order will be filed.

Dated October 31, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE